UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF DEL MAR, a California public entity,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE ENTERPRISES, LLC , a Delaware limited liability company; and TIME WARNER CABLE PACIFIC WEST, LLC, a Delaware limited liability company.<br><br>Defendants. | Case No.: 3:17-cv-00186-CAB-(NLS)<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 23]** |

Defendants Time Warner Cable Enterprises, LLC ("TWC Enterprises") and Time Warner Cable Pacific West, LLC ("TWC Pacific West")("collectively, "TWC") bring a motion for summary judgment in their favor on the claims of Plaintiff City of Del Mar's ("City's") First Amended Complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

1

**I. Background**

TWC Pacific West provides cable television services to the City pursuant to a statewide cable franchise agreement issued under the California's Digital Infrastructure and Video Competition Act of 2006 ("DIVCA")(Cal. Pub. Util. Code. §§ 5800-5970). [Doc. No. 23-2 at ¶5; Doc. No. 23-6.] The City filed this lawsuit in state court asserting three causes of action against TWC Enterprises only. TWC Enterprises removed the City's complaint to this Court on the basis of diversity jurisdiction. On February 6, 2017, TWC Enterprises filed a motion to dismiss the complaint, in which it noted that TWC Pacific West is a necessary defendant to the City's claims. At the hearing on the motion to dismiss, the City conceded that TWC Pacific West is a necessary party to this lawsuit and indicated that it had prepared an amended complaint adding TWC Pacific West as a party. For this reason only, the Court granted the motion to dismiss without prejudice and ordered the City to file an amended complaint. [Doc. No. 17.]

On May 18, 2017, the City filed the First Amended Complaint ("FAC"). [Doc. No. 18.] First, the City seeks declaratory relief that because the DIVCA requires TWC to provide public access channels and transmit any public, educational, and governmental ("PEG") programming that is provided to TWC by the City, the City should not have to pay a monthly service fee of $700 to provide that content to TWC. Second, the City seeks declaratory relief that TWC must pay a 2% "PEG fee" pursuant a local ordinance adopted by the City. Third, the City asserts a violation of Del Mar Municipal Code §6.41.030(b). Fourth, the City asserts a claim for breach of contract insofar as TWC's violations of DIVCA breach its state-issued video franchise agreement with the state of California, of which the City asserts it is a third-party beneficiary. On June 1, 2017, TWC filed an answer to the FAC. [Doc. No. 21.]

TWC has now filed a motion for summary judgment, requesting that the Court grant judgment in its favor as to all of the claims in the FAC. [Doc. No. 23.] The motion is fully briefed. [Doc. Nos. 25 and 26.]

## II. Legal Standard

The familiar summary judgment standard applies here. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (*citing Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## III. Defendant's Request for Judicial Notice

TWC requests that the Court take judicial notice of two documents: (1) a copy of the California Video Franchise certificate issued to TWC Pacific West by the California Public Utilities Commission under DIVCA with an effective date of January 2, 2008; and (2) a copy of Ordinance No. 874 adopted on December 3, 2012 by the City of Del Mar,

amending the Del Mar Municipal Code to establish a 2% PEG fee. [Doc. No. 23-5.] TWC asserts that the two documents are judicially noticeable pursuant to Rule 201(d) of the Federal Rules of Evidence. The City does not dispute the authenticity of the documents. Accordingly, TWC's request for judicial notice is granted.

## IV. Analysis

"In 2006, California passed DIVCA, which required cable operators such as Defendants to transition from locally issued franchises to state-issued franchises." *Cty. of Los Angeles v. Time Warner NY Cable LLC*, No. CV1206655SJOJCX, 2013 WL 12126774, at *2 (C.D. Cal. July 3, 2013) (citing Cal. Pub. Util. Code §§ 5800). Prior to passage of the DIVCA, TWC had provided cable services to the City pursuant to a local franchise agreement. When its local agreement expired in 2013, TWC switched to a state-issued video franchise. [Doc. No. 18 at ¶¶ 7-9.] All of the City's claims concern the City's and TWC's obligations under TWC's state-issued franchise agreement for Del Mar.

### A. Claim One -- $700 Monthly Service Fee

The DIVCA requires a cable operator to provide PEG channels to subscribers so they can watch PEG content. Cal. Pub. Util. Code § 5870(f). However, "the content to be provided over the PEG channel capacity . . . shall be the responsibility of the local entity . . . and the holder of the state franchise bears only the responsibility for the transmission of that content, subject to technological restraints." *Id.* Furthermore:

> The local entity shall ensure that all transmission, content or programming to be transmitted by a holder of a state franchise are provided or submitted in a manner or form that is compatible with the holder's network . . . If the local entity does not produce or maintain PEG programming in that manner or form, then the local entity may submit or provide PEG programming in a manner or form that is standard in the industry. The holder shall be responsible for any changes in the form of the transmission necessary to make it compatible with the technology or protocol utilized by the holder to deliver services.

*Id.* § 5870(g)(1).

The City's first claim challenges a monthly $700 service fee TWC charges the City to transport, via a fiber connection, the City's PEG content from the place it originates (Del

4

Mar City Hall), to distribution facilities on TWC's cable system. The City claims this charge is prohibited by the DIVCA. Whether "transmission" constitutes incurring the costs of transporting the PEG content to the TWC distribution facilities is at dispute here. The City argues that TWC has violated DIVCA by making the City pay a monthly fee of $700 per month for the transporting of its PEG content.[1] TWC does not dispute that it has made the City pay this monthly fee. Instead, TWC argues that DIVCA does not obligate it to incur the expense of obtaining the City's PEG content from its origin point in order to deliver it to TWC's customers. TWC claims that under the statute, the City is obligated to deliver, and incur the cost of delivering, its PEG content from wherever it originates to TWC's distribution facilities in order for TWC to then transmit the PEG content to its customers.

DIVCA requires TWC to transmit PEG content as part of its obligations under its state franchise agreement. *See id*. § 5870(f). However, TWC is under no obligation to incur the expense of transporting the PEG content from its place of origin, Del Mar City Hall, to then take it to the distribution facilities on TWC's cable system in order to transmit the content to its customers. The statute specifically says that "the [PEG] content to be provided . . . shall be the responsibility of the local entity" and that the holder of the franchise "bears *only the responsibility for transmission* of that content." *Id.* (emphasis added). Under the statute, once the PEG content—for which the City is responsible — is delivered to TWC's distribution facilities, TWC is then, and only then, responsible for transmitting the PEG programming to its subscribers. Therefore, the City is responsible for

---

[1] The City argues that it needs more time to conduct discovery as to whether the $700 fee includes other services, as was apparently asserted by TWC at the last hearing. [Doc. No. 25 at 18-19.] However, the City maintains that the $700 fee is strictly limited to the transporting of the PEG materials [Doc. No. 25 at 19; Doc. No. 25-1 at ¶5]; and that is exactly what is assumed in the Court's analysis. Therefore, no further discovery is required on this issue.

5

transporting, and incurring the costs of transporting, its own PEG content from its place of origin, to TWC's distribution facilities.[2]

Because TWC is not obligated to transport the City's content from its place of origin to TWC's facilities, the issue of whether the fee was prohibited by the five percent of gross revenue federal cap is moot.

For the reasons provided above, the City's first cause of action fails as a matter of law on the undisputed material facts because DIVCA does not require TWC Pacific West to provide the City with free Ethernet service; TWC Enterprises is not the franchisee and therefore also is not required to provide the City with free Ethernet. Accordingly, the motion for summary adjudication as to the First Cause of Action of the FAC is **GRANTED** in favor of TWC Pacific West and TWC Enterprises.

**Claim Two – 2% PEG Fee**

The City next alleges that it is entitled to receive a 2% PEG fee, which TWC has refused to pay, pursuant to the City's local ordinance in line with DIVCA guidelines.

Among other things, in exchange for granting a franchise to a cable operator, a franchising authority may impose a "franchise fee" on a cable operator. *See id.* § 542. The fees paid by the cable operator with respect to any cable service cannot exceed 5% of the operator's gross revenues derived in such period from the provision of such service over the cable system. *Id.* § 542(h)(2).

Video service providers[3] under the DIVCA must "pay as rent a franchise fee to the local entity in whose jurisdiction service is being provided for the continued use of the streets, public facilities, and other rights-of-way of the local entity." *Id.* § 5810(b). The

---

[2] This conclusion is further supported by the undisputed evidence that the franchise agreement is held by TWC Pacific West LLC [Doc. No. 23-6], and it is TWC Pacific West that has the responsibility for *transmission* of the PEG content. However, the Ethernet service, which *transports* the PEG content from City Hall to TWC facilities, is provided by TWC Enterprises. [*See* Doc. No. 23-2 at ¶6, Ex. 1.] TWC Enterprises has no obligation to provide such Ethernet service for free.

[3] It is undisputed that TWC Pacific West is both a cable operator and a video service provider under DIVCA.

franchise fee is capped at five percent of gross revenue, as mandated by federal law. *Id.* § 5840(q)(1). The Cable Act defines a franchise fee to include "any tax, fee or assessment of any kind imposed by a franchising authority or other governmental entity on a cable operator or cable subscriber, or both, solely because of their status as such." 47 U.S.C. § 542(g)(1). However, within the same statute, franchise fee is deemed not to include "any tax, fee, or assessment of general applicability," any "capital costs which are required by the franchise to be incurred by the cable operator for [PEG] facilities," or any "requirements or changes incidental to the awarding or enforcing of the franchise. *Id.* §§ 542(g)(2)(A); 542(g)(2)(C); 542(g)(2)(D).

DIVCA provides a local entity the authority to establish a fee to support PEG channel facilities. *Id.* §5870(n). As specifically laid out in the statute, a local entity is entitled to establish a PEG fee of greater than 1%, but no more than 3%, through a local ordinance, if they had such a fee under a local cable franchise agreement prior to December 31, 2006. *Id.* In other words, if under the local franchise agreement there existed a PEG fee of 2%, the local entity may pass a local ordinance to maintain the PEG fee at the same level after the enactment of DIVCA. *See id.* Thus, the remaining question here, is whether the enactment of such an ordinance established a tax which would require voter approval pursuant to Proposition 26.

Whether an imposition is a tax or a fee, for purposes of voter approval is a question of law to be decided on independent review of the facts. *Bay Area Cellular Tel. Co., v. City of Union City*, 162 Cal. App. 4th 686, 693 (2008). In 2010, Proposition 26 amended the state Constitution to add a new definition of "tax." Cal. Const., art XIII C, § 1(e). Under the new definition, a state or local "tax" is defined as "any levy, charge, or exaction of any kind" imposed by the state or local government, save for five enumerated exceptions. Cal. Const., art XIII A, § 3(b). "Impose" means to "establish or apply by authority; to establish or bring about as if by force," and thus the phrase "imposed by a local government" connotes that the government is using its own authority or force to assess and require payment. 99 Ops. Cal. Atty. Gen. 1 (2016). The practical effect of Prop 26 is that a local

government generally cannot impose, increase, or extend a fee without voter approval. *Id.*[4] However, the definition of tax specifically excludes "a charge imposed for entrance to or use of state property, or the purchase, rental, or lease of state property." Cal. Const., art XIII A, § 3(e)(4). Thus, Prop 26 does not require voter approval before a local government enacts an ordinance requiring a cable television franchise holder providing service in the county to pay a PEG fee equal to one percent of the holder's gross revenues as authorized under DIVCA. 99 Ops. Cal. Atty. Gen. 1. DIVCA authorizes local governments to impose PEG fees. *See id.* This means that local entities are not using their own authority to impose these fees. Further, DIVCA requires franchise applicants to agree, as a condition of being granted a cable franchise, to provide both public access channels and the funding to support them. *See* Cal. Pub. Util. Code § 5840 (e)(1)(B)(iv).

Here, prior to TWC Pacific West obtaining a state-issued franchise, TWC Pacific West and the City had a local franchise agreement, under which TWC Pacific West was subject to a 2% PEG fee. [Doc. No. 23-4 at ¶7.] In July 2007, shortly after the passage of DIVCA, the City adopted Ordinance No. 797, adding Del Mar Municipal Code Section 6.41.030(B) to impose a one percent PEG fee on holders of state-issued franchises. [Doc. No. 23-7 at 2.] Because Ordinance No. 797 was adopted prior to the enactment of Prop 26, it is not disputed whether it was subject to its requirements. On December 3, 2012, about a month prior to the expiration of the local cable franchise, the City adopted Ordinance No. 874[5], thereby amending Chapter 6.41 to the Del Mar Municipal Code, establishing a 2%

---

[4] Proposition 26 identifies seven categories of regulatory, entrance, and service fees, fines, and property charges that are exempt to the voter approval requirement. See Cal. Const., art XIII C, § 1(e).

[5] Ordinance No. 874 of Del Mar was adopted on December 3, 2012, as a response to the passing of DIVCA. The ordinance addressed that Del Mar had an existing franchise agreement with TWC which provided Del Mar with a fee based upon 2% of cable television gross revenue which is established to fund PEG infrastructure maintenance upgrade and development. The ordinance further acknowledged that the franchise agreement it had with TWC expired on December 31, 2012, and that upon such expiration date, Del Mar desired to continue the PEG fee at the current 2% level. [Doc. No. 23-7 at 2-3.]

PEG fee to fund infrastructure maintenance upgrades and development. [Doc. No. 23-7 at 2-3.]

TWC Pacific West does not dispute that it has refused to pay the 2% PEG fee since it obtained the state franchise. Instead, TWC Pacific West contends that the ordinance establishing the 2% PEG fee is unconstitutional under Prop 26, and insists it is only subject to a 1% PEG fee. In other words, TWC Pacific West argues that the City is not entitled to collect a 2% PEG fee, at least until it adopts the additional 1% through voter approval as mandated by Prop 26. However, TWC Pacific West ignores that a charge imposed for use of state property, such as the continued use of Del Mar's streets here, is not within the constitutional definition of tax. *See id.* § 5810(b). Because the fee here is not within the definition of tax, the City did not need to subject the ordinance establishing the 2% PEG fee to voter approval. Therefore, the City's ordinance was properly adopted both within constitutional provisions and DIVCA.

Even if the additional 1% PEG fee were to be interpreted as a tax, TWC Pacific West would lack standing to challenge the ordinance. The core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751 (1984). Article III standing requires that the challenger have suffered an injury in fact, which is an invasion of a legally protected interest which is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order for injury to be "particularized," it must affect the challenger in a personal and individual way. *Id.* at 563.

DIVCA permits the holder of a state franchise to recover the amount of any fee remitted to a local entity, for the purposes of PEG programming, by billing a recovery fee as a separate line item on the regular bill of each subscriber. Cal. Pub. Util. Code § 5870(o). Meaning, if a holder is subject to pay a PEG fee to a local entity, the holder may collect that fee by charging an extra item to each of its customers, and then paying it forward to the local entity. *See id.* § 5870(n), (o).

Assuming that the 1% additional PEG fee is a tax, TWC Pacific West lacks standing to challenge its validity, as it has not suffered an injury in fact. As previously stated, an injury in fact must be particularized, meaning it must affect TWC Pacific West in a personal and individual way. However, were this fee classified as a tax, TWC Pacific West would be merely collecting it from its customers. Therefore, TWC Pacific West would not suffer an injury that is either personal or individual, as to fulfill the "particularized" injury in fact requirement necessary for standing.[6]

For the reasons set forth above, the Court finds the City's 2% PEG fee is constitutional and authorized by DIVCA. Therefore, Defendants' motion for summary adjudication as to Claim Two is **DENIED**. The City has not filed a counter motion for summary judgment and, therefore, summary adjudication in favor of the City as to Claim Two (as to TWC Pacific West) cannot be granted at this time.

**Claim Three – Violation of Del Mar Municipal Code §6.41.030(b)**

For the reasons set forth above, the ordinance is constitutional and authorized by DIVCA. It is undisputed that TWC has failed to pay the required 2% PEG fee. Therefore, Defendants' motion for summary adjudication as to Claim Three is **DENIED**. The City has not filed a counter motion for summary judgment and, therefore, summary adjudication in favor of the City as to Claim Three (as to TWC Pacific West) cannot be granted at this time.

**Claim Four -- Breach of Contract**

"A contract, made expressly for the benefit of a third person, may be enforced by [it] at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. The test for

---

[6] Defendants argue they have standing and cite to *San Diego v. Shapiro*, 228 Cal.App.4th 756 (2014). [Doc. No. 23-1 at 26, n. 6.] However, *Shapiro* does not support Defendants' position. In *Shapiro*, only the landowners (of hotel properties), who could pass the tax on to their hotel guests, were allowed to vote for the tax. The court held the landowners were not the proper class to vote on the tax because they would not bear the economic incidence of the tax. *Shapiro,* 228 Cal. App. 4th at 783-84. Similarly here, TWC Pacific West would not bear the economic incidence of an alleged tax and, therefore, it has no standing to challenge it. TWC Enterprises is not the franchisee and therefore also has no standing.

determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009). That the party would have incidentally benefitted from the performance is not enough. *Unite Here Local 30 v. Dep't of Parks and Recreation*, 194 Cal. App. 4th 1200, 1215 (2011). The parties must have intended to confer a benefit on the third party. *Id.* However, the third person need not be named or identified individually to be an express beneficiary. *Id.* A third party may enforce a contract where he shows that he is a member of a class of persons whose benefit it was made. *Id.*

Under the terms of DIVCA, cable providers under a state-wide franchise agreement are obligated to transmit all PEG programming to local agencies including Del Mar. *See* Cal. Pub. Util. Code § 5870(f). Moreover, DIVCA specifically states that it is the "intent of the Legislature that a video service provider shall pay as rent a franchise fee to the local entity in whose jurisdiction service is being provided for the continued use of streets, public facilities, and other rights-of-way if the local entity in order to provide service." *Id.* §5810(b). Thus, DIVCA gives the local entities authority to impose franchise fees on the cable providers that have been issued a state-wide franchise agreement. *See* id. § 5870(n).

By agreeing to a state-issued video franchise under DIVCA, TWC Pacific West accepted the terms and conditions that came with it. Under the terms of the agreement, the City can be deemed to be a third party beneficiary in that the City is to receive the benefit of receiving access to public channels provided by TWC Pacific West. Most notably, the City is authorized to receive a benefit from TWC Pacific West by imposing a PEG fee on TWC Pacific West to support its public television services. *See id.* Therefore, the City can proceed with a breach of contract claim against TWC Pacific West (only).

For the reasons set forth above, TWC's motion for summary adjudication as to Claim Four is **DENIED** as to TWC Pacific West; however TWC's motion for summary adjudication as to Claim Four is **GRANTED** as to TWC Enterprises.

## V. Conclusion

In light of the above, **IT IS HEREBY ORDERED**:

(1) TWC's motion for summary adjudication as to Claim one is **GRANTED** in favor of TWC Pacific West and TWC Enterprises;

(2) TWC's motion for summary adjudication as to Claim two is **DENIED**;

(3) TWC's motion for summary adjudication as to Claim three is **DENIED**; and

(4) TWC's motion for summary adjudication as to Claim four is **GRANTED** in favor of TWC Enterprises and **DENIED** as to TWC Pacific West.

**IT IS SO ORDERED.**

Dated: August 28, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge